UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

EDUARDO CEBALLOS ORTIZ,

                Petitioner,

v.

KEVIN RAYCRAFT et al.,

                Respondents.

_____/

Case No. 1:25-cv-1328

Honorable Paul L. Maloney

## OPINION

Petitioner Eduardo Ceballos Ortiz initiated this action on October 30, 2025, by filing a counseled petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241. (§ 2241 Pet., ECF No. 1.) Petitioner is presently detained by the United States Immigration and Customs Enforcement (ICE) at the North Lake Processing Center (North Lake) in Baldwin, Lake County, Michigan.

Petitioner challenges the lawfulness of his current detention and asks the Court for the following relief: to accept jurisdiction over this action; to issue a writ of habeas corpus pursuant to 28 U.S.C. § 2241 requiring Respondents to promptly release Petitioner, or, if he is already released and no longer in ICE custody, provide prompt reimbursement of all bond payments and lift all imposed conditions of release; alternatively, to issue a writ of habeas corpus requiring that Respondents release Petitioner or provide him with a bond hearing within fourteen (14) days; and to award attorneys' fees and costs for this action. (§ 2241 Pet., ECF No. 1, PageID.14.)

In an order (ECF No. 3) entered on November 4, 2025, the Court directed Respondents to show cause, within three business days, why the writ of habeas corpus and other relief requested

by Petitioner should not be granted. Respondents filed their response (ECF No. 4) on November 7, 2025. Petitioner filed his reply (ECF No. 5) on November 12, 2025. For the following reasons, the Court will grant Petitioner's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241.

## <u>Discussion</u>

### I.    **Factual Background**

Petitioner is a native and citizen of Mexico. (Wachowski Decl. ¶ 4, ECF No. 4-1, PageID.50.) Petitioner represents that he has resided in the United States since 2009. (§ 2241 Pet., ECF No. 1, PageID.4, 11.)

On October 11, 2025, United States Border Patrol (USBP) agents encountered Petitioner "during a local operation conducted in or around the general area of Chicago, Illinois." (Wachowski Decl. ¶ 5, ECF No. 4-1, PageID.50.) Agents arrested Petitioner "without issuing a Form I-200, Warrant for Arrest of Alien, based upon the agents' reasonable suspicion that [Petitioner] was present in the United States unlawfully and would flee immigration officials before a Form I-200 could be issued." (*Id.* ¶ 6, PageID.50–51.)

A copy of the Form I-213, Record of Deportable/Inadmissible Alien, is attached to Agent Wachowski's declaration. In that form, USBP Agent Timothy Donahue indicated that when Petitioner first saw the USBP agents' stopped vehicle, Petitioner "immediately turned and fled on foot." (ECF No. 4-1, PageID.56.) Agent Donahue "pursued and apprehended [Petitioner] after a short chase." (*Id.*) Once Petitioner was detained, Agent Donahue identified himself as a USBP agent and questioned Petitioner regarding his citizenship. (*Id.*) Petitioner "freely admitted he was a citizen of Mexico with no valid immigration documents allowing him to enter or remain in the United States." (*Id.*)

Agent Donahue "determined [that Petitioner] was likely to escape before a warrant could be obtained for his arrest based on his immediate flight from law enforcement upon noticing

[Agent Donahue], indicating he would seek to evade law enforcement in future." (*Id.*) Agent Donahue also noted that Petitioner "provided no specific information regarding his living or work circumstances." (*Id.*) In Agent Donahue's experience, "subjects who flee from law enforcement and fail to provide basic details about their home or work circumstances are flight risks likely to abscond rather than face apprehension and deportation." (*Id.*)

On October 12, 2025, ICE served Petitioner with a Form I-200, Warrant for Arrest of Alien, and Form I-862, Notice to Appear (NTA). (Wachowski Decl. ¶ 7, ECF No. 4-1, PageID.52.) Petitioner was charged with inadmissibility pursuant to § 212(a)(6)(A)(i)(I) of the Immigration and Nationality Act (INA) because Petitioner is an "immigrant who was present in the United States without having been admitted or paroled, or who arrived at a time or place not designated by the Attorney General." (*Id.* ¶ 7, PageID.52–53.) Petitioner was also charged with inadmissibility pursuant to § 212(a)(7)(A)(i)(I) of the INA "for being an immigrant who, at the time of application for admission, is not in possession of valid immigration and travel documents." (*Id.* ¶ 7, PageID.53.)

ICE detained Petitioner "without bond under INA § 235 because [he] is an applicant for admission who is seeking admission, and he is not clearly and beyond doubt entitled to admission." (*Id.* ¶ 8.) Petitioner has not requested a bond hearing. (*Id.* ¶ 9.) He is "currently in removal proceedings on the detained docket before the Detroit Immigration Court." (*Id.*) Petitioner appeared for a master calendar hearing on November 7, 2025. (*Id.*)

## II.    Habeas Corpus Legal Standard

The Constitution guarantees that the writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). The primary habeas corpus statute, 28 U.S.C. § 2241, confers upon the federal courts the power to issue writs of habeas corpus to persons "in custody in violation of the

Constitution or laws or treaties of the United States." This includes challenges by non-citizens in immigration related matters. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001)

## III.    Exhaustion

Respondents first contend that this Court should deny Petitioner's request for habeas corpus relief because Petitioner has not exhausted his administrative remedies. (ECF No. 4, PageID.21.) Specifically, Respondents argue that Petitioner has not requested a bond hearing. (*Id.*, PageID.22.) According to Respondents, "[s]hould [Petitioner] request and the court grant a hearing, he would have the right to appeal any unfavorable decision to the BIA." (*Id.*) Petitioner avers that "this Court should waive any exhaustion requirements and review the merits of [his] habeas petition." (ECF No. 5, PageID.63.) For the following reasons, the Court agrees with Petitioner that exhaustion should be waived.

Here, no applicable statute or rule mandates administrative exhaustion by Petitioner. Thus, whether to require exhaustion is within this Court's "sound judicial discretion." *See Shearson v. Holder*, 725 F.3d 588, 593 (6th Cir. 2013) (quoting *McCarthy v. Madigan*, 503 U.S. 140, 145 (1992)) (internal quotation marks omitted). This discretion is referred to as "prudential" exhaustion, *Island Creek Coal Co. v. Bryan*, 937 F.3d 738, 746 (6th Cir. 2019), and such a court-made exhaustion rule must comply with statutory schemes and Congressional intent, *Shearson*, 725 F.3d at 593–94. Notably, the United States Court of Appeals for the Sixth Circuit has not yet decided "whether courts should impose administrative exhaustion in the context of a noncitizen's habeas petition for unlawful mandatory detention." *See Pizarro Reyes v. Raycraft*, No. 25-cv-12546, 2025 WL 2609425, at *3 (E.D. Mich. Sept. 9, 2025) (citing *Hernandez v. U.S. Dep't of Homeland Sec.*, No. 1:25-cv-1621, 2025 WL 2444114, at *8 (N.D. Ohio Aug. 25, 2025)). However, courts within the Sixth Circuit "have applied the three-factor test, set forth in *United States v. California Care Corp.*, 709 F.2d 1241 (9th Cir. 1983)," to determine whether prudential

exhaustion should be required. *See Lopez-Campos v. Raycraft*, No. 2:25-cv-12486, 2025 WL 2496379, at *4 (E.D. Mich. Aug. 29, 2025). Thus,

> [c]ourts may require prudential exhaustion when:
>
> (1) agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision;
>
> (2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and
>
> (3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review.

*Id.* (citing *Shweika v. Dep't of Homeland Sec.*, No. 1:06-cv-11781, 2015 WL 6541689, at *12 (E.D. Mich. Oct. 29, 2015)).

Upon consideration of these factors, this Court concludes that prudential exhaustion should not be required in Petitioner's case. First, the central question presented by Petitioner's § 2241 petition is whether 8 U.S.C. § 1225 or 8 U.S.C. § 1226 applies to Petitioner. That determination relies upon a purely legal question of statutory interpretation and does not require the record that would be developed should the Court require Petitioner to exhaust his administrative remedies. Moreover, this Court is not bound by and is not required to give deference to any agency interpretation of a statute. *See Loper Bright Enter. v. Raimondo*, 603 U.S. 369, 413 (2024) (noting that "courts need not and under the [Administrative Procedure Act (APA)] may not defer to an agency interpretation of the law simply because a statute is ambiguous.").

Second, Petitioner's constitutional challenge to his detention does not require exhaustion. The Sixth Circuit has noted that due process challenges, such as the one raised by Petitioner here, generally do not require exhaustion because the BIA cannot review constitutional challenges. *See Sterkaj v. Gonzales*, 439 F.3d 273, 279 (6th Cir. 2006). Finally, it is doubtful that BIA review of Petitioner's custody would preclude the need for judicial review. The Court reaches that

conclusion based upon the fact that the Government has clearly set forth its belief that § 1225(b)(1)(A) applies to all aliens who have resided within the United States prior to their arrest and detention. Notably, the BIA recently proclaimed that any individual who has ever entered the United States unlawfully and was later detained is no longer eligible for bond and is subject to mandatory detention under § 1225(b)(2)(A). *See Matter of Yajure Hurtado*, 29 I&N Dec. 216, 229 (BIA 2025). It is simply unlikely that any administrative review by the BIA would lead the Government to change its position and thereby preclude judicial review of Petitioner's § 2241 petition. Accordingly, for the foregoing reasons, this Court concludes that prudential exhaustion is not required.

Alternatively, even in situations where a court may ordinarily apply prudential exhaustion, the court may still choose to waive exhaustion. *See Lopez-Campos*, 2025 WL 2496379, at *4. A court may choose to rule upon the merits of the issues presented when the "legal question is fit for resolution and delay means hardship." *See Shalala v. Ill. Council on Long Term Care, Inc.*, 529 U.S. 1, 13 (2000) (citation omitted). A court may also waive exhaustion if the "pursuit of administrative remedies would be a futile gesture." *Shearson*, 725 F.3d at 594 (citation omitted).

Here, there is no question that delay would result in hardship to Petitioner. First, as noted above, Petitioner would need to request a bond redetermination hearing before an immigration judge. There is no evidence in the record as to how long Petitioner would have to wait until such a hearing, if any, were scheduled. Petitioner's request would likely be denied given the BIA's recent decision in *Yajure Hurtado*. Then, Petitioner would have the opportunity to appeal any unfavorable decision to the BIA. Appeals of bond denials "typically take six months or more to be resolved at the BIA." *See Rodriguez v. Bostock*, 779 F. Supp. 3d 1239. 1245 (W.D. Wash. 2025).

6

As set forth above, Petitioner appeared before the immigration court for a master calendar hearing on November 7, 2025. However, the record is silent as to when Petitioner will be scheduled for his final merits hearing. It is possible that a determination from the BIA as to whether Petitioner is entitled to bond would come before any final decision regarding removal. Nevertheless, it is unmistakable that "depriving [Petitioner] of his liberty while awaiting a BIA appeal decision certainly equates to hardship. And any delay results in the very harm [Petitioner] is trying to avoid . . . – detention." *See Lopez-Campos*, 2025 WL 2496379, at *5.

In sum, the Court declines to enforce the doctrine of prudential exhaustion against Petitioner. Moreover, even if the Court were to conclude that prudential exhaustion is warranted, the Court concludes in the alternative that waiver of exhaustion is appropriate. Accordingly, the Court will proceed to address the merits of Petitioner's § 2241 petition.

## IV.    Merits Discussion

### A.    Statutory Basis for Petitioner's Detention

Petitioner contends that Respondents have violated the INA by concluding that Petitioner is detained pursuant to the mandatory provisions set forth in 8 U.S.C. § 1225(b)(2). (§ 2241 Pet., ECF No. 1, PageID.13.) According to Petitioner, § 1225(b)(2) "does not apply to those who previously entered the country and have been residing in the United States prior to being apprehended and placed in removal proceedings by Respondents." (*Id.*) Respondents, however, contend that Petitioner is properly detained under § 1225 because he is "an alien present without admission and, consequently, an applicant for admission." (ECF No. 4, PageID.26.) To address the parties' arguments, the Court must examine the two primary statutory provisions at play: 8 U.S.C. § 1225 and § 1226.

Section 1225(b)(2)(a) provides that

> in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a of this title

8 U.S.C. § 1225(b)(2)(a).

Section 1226(a), on the other hand, "authorizes the Government to detain certain aliens already in the country pending the outcome of removal proceedings." *Jennings v. Rodriguez*, 583 U.S. 281, 289 (2018). It states:

> On a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States. Except as provided in subsection (c)[1] and pending such decision, the Attorney General
>
> > (1) may continue to detain the arrested alien; and
> >
> > (2) may release the alien on
> >
> > > (A) bond of at least $1,500 with security approved by, and containing conditions prescribed by, the Attorney General; or
> > >
> > > (B) conditional parole . . . .

8 U.S.C. § 1226(a).

In sum, both provisions govern the detention of noncitizens pending removal proceedings; the critical difference is that § 1225 provides for mandatory detention, while § 1226 allows for the release of the noncitizen on conditional parole or bond. For the following reasons, the Court finds that Petitioner's detention is governed by § 1226.

Respondents contend that Petitioner is detained pursuant to § 1225 because he is an applicant for admission who has been placed in removal proceedings pursuant to 8 U.S.C. § 1229a. (ECF No. 4, PageID.27.) According to Respondents, "there is no textual basis for arguing that

---

[1] Subsection (c) refers to the "[d]etention of criminal aliens," which does not apply here. *See* 8 U.S.C. § 1226(c).

§ 1225(b)(2) applies only to arriving aliens." (*Id.*, PageID.28.) Respondents aver that "by its very definition, the term 'applicant for admission' includes two categories of aliens: (1) arriving aliens, and (2) aliens present without admission." (*Id.*, PageID.25.) Petitioner, however, claims that

> [s]ection 1226 . . . leaves no doubt that it applies to people who face charges of being inadmissible to the United States, including those who are present without admission or parole. By contrast, § 1225(b) applies to people arriving at U.S. ports of entry or who recently entered the United States.

(§ 2241 Pet., ECF No. 1, PageID.10.) Thus, Petitioner argues, "the mandatory detention provision of § 1225(b)(2) does not apply to people like Petitioner, who have already entered and were residing in the United States at the time they were apprehended." (*Id.*)

"A statute should be construed so that effect is given to all its provisions." *Corey v. United States*, 556 U.S. 303, 314 (2009); *see also Kentucky v. Biden*, 23 F.4th 585, 603 (6th Cir. 2022 (noting how courts "must give effect to the clear meaning of statutes as written"). When engaging in statutory interpretation, the Court's "inquiry 'begins with the statutory text, and ends there as well if the text is unambiguous.'" *See In re Vill. Apothecary, Inc.*, 45 F.4th 940, 947 (6th Cir. 2022) (quoting *Binno v. Am. Bar Ass'n*, 826 F.3d 338, 346 (6th Cir. 2016)). However, ambiguity is not determined by examining provisions in isolation. "[T]he 'meaning—or ambiguity—of certain words or phrases may only become evident when placed in context.'" *King v. Burwell*, 576 U.S. 473, 486 (2015) (quoting *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 159 (2000)). "The words of a statute must be read in their context and with a view to their place in the overall statutory scheme." *Roberts v. Sea-Land Servs., Inc.*, 566 U.S. 93, 101 (2012). This Court must also "use every tool at [its] disposal to determine the best reading of the statute." *Loper Bright Enter.*, 603 U.S. at 400. Examining the statute as a whole, in line with the guiding principles of statutory construction, this Court agrees with the numerous other courts in the country that have concluded that Respondents' interpretation of the statute is too broad.

As set forth above, Respondents contend that Petitioner is detained pursuant to § 1225 because he is an applicant for admission. Section 1225 defines an "applicant for admission" as any noncitizen "present in the United States who has not been admitted or who arrives in the United States (whether or not at a designated port of arrival . . .)." 8 U.S.C. § 1225(a)(1). The INA further defines "admission" and "admitted" as "the lawful entry of the alien into the United States after inspection and authorization by an immigration officer." *See* 8 U.S.C. § 1101(a)(13). Therefore, based on a plain reading of this limited phrase, any noncitizen who has not been legally allowed to enter is treated under § 1225 as an "applicant for admission." Here, however, at issue is whether "an alien present in the United States who has not been admitted" includes individuals like Petitioner who have been present in the United States for years, but who did not enter lawfully.

Although the terms of § 1225 may seem unambiguous when viewed in isolation, context matters. *Yates v. United States*, 574 U.S. 528, 537 (2015) (emphasizing the importance of context even when a statutory term is unambiguous). Section 1225(b)(2) provides that "in the case of an alien who is *an applicant for admission*, if the examining immigration officer determines that *an alien seeking admission* is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a of this title." *Id.* § 1225(b)(2)(A) (emphasis added). Respondents' reading of § 1225 would render the remaining qualifier of "an alien seeking admission" entirely unnecessary. "That is, rather than stating that mandatory detention is required for any 'applicant for admission, if the examining immigration officer determines that an alien *seeking admission* is not clearly and beyond a doubt entitled to be admitted,' the statute would instead provide for mandatory detention for any 'applicant for admission, if the examining immigration officer determines that [the] alien ~~seeking admission~~ is not clearly and beyond a doubt entitled to be admitted.'" *Lopez Benitez v. Francis*, —— F.Supp.3d ——, No. 25 CIV. 5937 (DEH),

2025 WL 2371588, at *6 (S.D.N.Y. Aug. 13, 2025) (strikethrough text in original) (quoting 8 U.S.C. § 1225(b)(2)(A)). "It is 'a cardinal principle of statutory construction' that a 'statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant.'" *TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001) (quoting *Duncan v. Walker*, 533 U.S. 167, 174 (2001)). Given Congress' decision to use different terms— "applicant for admission" and "alien seeking admission"—the Court presumes that Congress intended to mean different things. *See Pulsifer v. United States*, 601 U.S. 124, 149 (2024) ("In a given statute, . . . different terms usually have different meanings.") Therefore, in examining the text of § 1225, the Court must also examine the meaning of the phrase "seeking admission." The question remains: is a noncitizen who already entered the United States unlawfully but seeks to stay "seeking admission"?

The plain, ordinary meaning of "seeking" means "asking for" or *Merriam-Webster Dictionary*, https://www.merriam-webster.com/dictionary/seeking (last visited Nov. 10, 2025). It is a present participle, which "necessarily implies some sort of present-tense action." *Martinez v. Hyde*, —— F.Supp.3d ——, No. CV 25-11613-BEM, 2025 WL 2084238, at *6 (D. Mass. July 24, 2025) The term "admission" is defined as "the lawful entry of the alien into the United States after inspection and authorization by an immigration officer." 8 U.S.C. § 1101(a)(13)(A). However, "entry," is not defined in the INA. *See generally id.* § 1101. The dictionary defines "entry" as "the right or privilege of entering" or "the act of entering." *Merriam-Webster Dictionary*, https://www.merriam-webster.com/dictionary/entry (last visited Nov. 10, 2025). "Entry" has long been understood to mean "a crossing into the territorial limits of the United States." *Hing Sum v. Holder*, 602 F.3d 1092, 1100–01 (9th Cir. 2010) (quoting *Matter of Pierre,* 14 I & N Dec. 467, 468 (BIA 1973)).

Here, however, Petitioner is not actively seeking to lawfully cross into the territorial limits of the United States because Petitioner already *entered* the United States 16 years ago, in 2009. As *Lopez Benitez* noted:

> [S]omeone who enters a movie theater without purchasing a ticket and then proceeds to sit through the first few minutes of a film would not ordinarily then be described as "seeking admission" to the theater. Rather, that person would be described as already present there. Even if that person, after being detected, offered to pay for a ticket, one would not ordinarily describe them as "seeking admission" (or "seeking" "lawful entry") at that point—one would say that they had entered unlawfully but now seek a lawful means of remaining there. As § 1225(b)(2)(A) applies only to those noncitizens who are actively "seeking admission" to the United States, it cannot, according to its ordinary meaning, apply to [petitioner], because he has already been residing in the United States for more than two years.

2025 WL 2371588, at *7; *see also Lopez-Campos v. Raycraft*, No. 2:25-cv-12486, —— F. Supp. 3d ——, 2025 WL 2496379, at *6 (E.D. Mich. Aug. 29, 2025) ("[S]eeking admission' implies action – something that is currently occurring, and in this instance, would most logically occur at the border upon inspection.").

Notably, § 1225 is titled: "Inspection by immigration officers; expedited removal of inadmissible arriving aliens; referral for hearing." A title such as this "is especially valuable [where] it reinforces what the text's nouns and verbs independently suggest." *Yates*, 574 U.S. at 552 (Alito, J., concurring). Congress' decision to include the word "arriving," as well as the decision to include references to methods of physical arrival, such as "stowaways" and as "crewmen" evidences an intent to address noncitizens coming to the United States—whether on one side of the border or the other—and who are presently "seeking admission" into the United States. *Pizarro Reyes v. Raycraft*, No. 25-CV-12546, 2025 WL 2609425, at *5 (E.D. Mich. Sept. 9, 2025) (citing to *Dubin v. United States*, 599 U.S. 110, 118 (2023)). The Supreme Court has recognized this distinction: that § 1225 applies to noncitizens when they arrive at the border or when they enter illegally and are caught very close to the border, and § 1226 applies to noncitizens

who successfully have entered the United States—whether legally or illegally. *See, e.g.*, *Jennings*, 583 U.S. at 289 ("In sum, U.S. immigration law authorizes the [g]overnment to detain certain [noncitizens] *seeking admission into* the country under §§ 1225(b)(1) and (b)(2). It also authorizes the [g]overnment to detain certain [noncitizens] *already in the country* pending the outcome of removal proceedings under § 1226(a) and (c)." (emphasis added)).

Furthermore, Respondents' interpretation urges this Court to turn a blind eye to the remainder of the statutory scheme. Courts are instructed to "construe statutes, not isolated provisions." *King*, 576 U.S. at 486. Whereas § 1225 governs the treatment of "arriving aliens," § 1226 is much broader, referring to all other aliens not lawfully present but not arriving. To read § 1226 otherwise would ignore recent amendments to § 1226 and render Congress' recent actions entirely superfluous, a result that this Court has long been instructed to avoid. *TRW Inc.*, 534 U.S. at 31 ("It is 'a cardinal principle of statutory construction' that a 'statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant.'" (quoting *Duncan v. Walker*, 533 U.S. 167, 174 (2001)).

Just this year, Congress enacted the Laken Riley Act, Pub. L. No.119-1, 139 Stat. 3 (2025), which amended § 1226 to prescribe a subset of noncitizens who are exempt from the discretionary bond analysis. Specifically, the Act added a subsection that explicitly mandates detention for those noncitizens who are inadmissible under §§ 1182(a)(6)(A), 1182(a)(6)(C), and 1182(a)(7), *and* who have been arrested for, charged with, or convicted of certain crimes. *See* 8 U.S.C. § 1226(c)(1)(E). Notably, § 1182(a)(6)(A) refers to "[a]n alien present in the United States without being admitted or paroled, or who arrives in the United States at any time or place other than as designated by the Attorney General . . .", in other words, someone like Petitioner. If all individuals like Petitioner, "present in the United States without being admitted or paroled," were already subject to

mandatory detention under § 1225, then there would have been no need for Congress to amend the INA to provide for mandatory detention of individuals who were "present in the United States without being admitted or paroled" *and* who were arrested, charged with, or committed certain crimes. Quite simply, were the Court to agree with Respondents' interpretation of §§ 1225 and 1226, the Court would be nullifying Congress's intent and rendering § 1226(c)(1)(E) entirely superfluous.

The Court concludes that § 1226(a), and not § 1225(b)(2)(A), governs noncitizens, such as Petitioner, who have resided in the United States for many years and were already within the United States when apprehended and arrested. The reading of the pertinent statutes clearly supports this conclusion. This Court has recently reached the same conclusion in a number of other habeas corpus matter filed by ICE detainees.[2] Moreover, this Court is far from the first federal district court to reach this conclusion.[3]

---

[2] *See Contreras Alvarez v. Noem*, No. 1:25-cv-1313, 2025 WL 3151948, at *5–6 (W.D. Mich. Nov. 12, 2025); *Hernandez Garcia v. Raycraft*, No. 1:25-cv-1281, 2025 WL 3122800, at *5 (W.D. Mich. Nov. 7, 2025); *Rodriguez Serrano v. Noem*, No. 1:25-cv-1320, 2025 WL 3122825, at *5–6 (W.D. Mich. Nov. 7, 2025); *Salgado Mendoza v. Noem*, No. 1:25-cv-1252, 2025 WL 3077589, at *6 (W.D. Mich. Nov. 4, 2025); *Ruiz Mejia v. Noem*, No. 1:25-cv-1227, 2025 WL 3041827, at *5–6 (W.D. Mich. Oct. 31, 2025); *De Jesus Ramirez v. Noem*, No. 1:25-cv-1261, 2025 WL 3039266, at *5 (W.D. Mich. Oct. 31, 2025); *Escobar-Ruiz v. Raycraft*, No. 1:25-cv-1232, 2025 WL 3039255, at *5 (W.D. Mich. Oct. 31, 2025); *Marin Garcia v. Noem*, No. 1:25-cv-1271, 2025 WL 3017200, at *5 (W.D. Mich. Oct. 29, 2025); *Cervantes Rodriguez v. Noem*, No. 1:25-cv-1196, 2025 WL 3022212, at *6 (W.D. Mich. Oct. 29, 2025); *Puerto-Hernandez v. Lynch*, No. 1:25-cv-1097, 2025 WL 3012033, at *9 (W.D. Mich. Oct. 28, 2025); *Rodriguez Carmona v. Noem*, No. 1:25-cv-1131, 2025 WL 2992222, at *6 (W.D. Mich. Oct. 24, 2025); *Sanchez Alvarez v. Noem*, No. 1:25-cv-1090, 2025 WL 2942648, at *6 (W.D. Mich. Oct. 17, 2025).

[3] *See, e.g.*, *Lopez-Campos*, 2025 WL 2496379, at *8; *see also Rodriguez*, 779 F. Supp. 3d at 1256–61; *Singh v. Lewis*, No. 4:25-cv-96-RGJ, 2025 WL 2699219, at *3–5 (W.D. Ky. Sept. 22, 2025); *Lopez-Arevelo v. Ripa*, No. EP-25-CV-337-KC, 2025 WL 2691828, at *7–12 (W.D. Tex. Sept. 22, 2025); *Campos Leon v. Forestal*, 1:25-cv-1774-SEB-MJD, 2025 WL 2694763, at *2–5 (S.D. Ind. Sept. 22, 2025); *Hasan v. Crawford*, No. 1:25-cv-1408 (LMB/IDD), 2025 WL 2682255, at *5–9 (E.D. Va. Sept. 19, 2025); *Garcia Cortes v. Noem*, No. 1:25-cv-2677-CNS, 2025 WL 2652880, at *2–3 (D. Colo. Sept. 16, 2025); *Kostak v. Trump et al.*, No. 3:25-cv-01093-JE-KDM, 2025 WL

Accordingly, for the foregoing reasons, Petitioner's case is governed by § 1226(a), and he is subject to the discretionary bond determination set forth therein.[4]

### B.    Fifth Amendment Due Process Considerations

Petitioner also argues that his detention violates the Fifth Amendment's Due Process Clause. (§ 2241 Pet., ECF No. 1, PageID.13.) Respondents, however, contend that Petitioner "admits that he entered the country without inspection in 2009 and evaded for over 15 years." (ECF No. 4, PageID.45.) Respondents aver further that Petitioner is not entitled to any further due process because Petitioner "received notice of the charges against him, has access to counsel, may attend hearings with an immigration judge, can request bond at that time, has the right to appeal the denial of any request for bond, and has been detained by ICE for a short time." (*Id.*)

The Supreme Court has held that "[o]nce an alien enters the country, the legal circumstance changes, for the Due Process Clause applies to all persons within the United States, including aliens, whether their presence is lawful, unlawful, temporary, or permanent." *Zadvydas*, 533 U.S. at 682. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the very liberty that [the Due Process Clause] protects." *Id.* at 690. The Fifth Amendment's Due Process Clause extends to all persons, regardless of status.

---

2472136, at *2–4 (W.D. La. Aug. 27, 2025); *Romero v. Hyde*, No. 1:25-cv-11631-BEM, 2025 WL 2403827, at *8–13 (D. Mass. Aug. 19, 2025); *Maldonado v. Olson*, No. 0:25-cv-03142-SRN-SGE, 2025 WL 2374411, at *9–16 (D. Minn. Aug. 15, 2025); *dos Santos v. Noem*, No. 1:25-cv-12052-JEK, 2025 WL 2370988, at *6–9 (D. Mass. Aug. 14, 2025); *Lopez Benitez v. Francis*, No. 1:25-cv-05937-DEH, 2025 WL 2371588, at *3–9 (S.D.N.Y. Aug. 13, 2025); *Rosado v. Figueroa*, No. 2:25-cv-02157-DLR, 2025 WL 2337099, at *6–11 (D. Ariz. Aug. 11, 2025), *report and recommendation adopted*, 2025 WL 2349133 (D. Ariz. Aug. 13, 2025); *Gomes v. Hyde*, No. 1:25-cv-11571-JEK, 2025 WL 1869299, at *6–8 (D. Mass. July 7, 2025). This is just a representative sampling of the various federal district courts that have reached the same conclusion as this Court.

[4] In light of this Court's conclusion that Petitioner is not an applicant for admission whose detention is mandated by § 1225(b)(2), the Court declines to consider Respondents' argument that applicants for admission may only be released from detention on discretionary parole pursuant to 8 U.S.C. § 11823(d)(5). (ECF No. 5, PageID.38.)

*See A. A. R. P. v. Trump*, 605 U.S. 91, 94, 145 S. Ct. 1364, 1367 (2025). This includes noncitizens, like Petitioner. *See id.*; *see also United States v. Verdugo-Urquidez*, 494 U.S. 259, 269 (1990); *Chavez-Acosta v. Garland*, No. 22-3045, 2023 WL 246837, at *4 (6th Cir. Jan. 18. 2023).

Granted, if this Court agreed with Respondents that Petitioner's detention is governed by § 1225(b)(2)(A), the Government's due process argument might hold true. However, as set forth *supra*, this Court does not agree with Respondents that Petitioner's detention is governed by § 1225(b)(2)(A). Instead, Petitioner's detention is governed by § 1226(a). Section 1226(a) clearly sets forth a discretionary framework for detention or release of an alien subject to that provision. The statute explicitly allows the Attorney General to continue to detain the arrested alien, or release the alien with either "bond of at least $1,500 with security approved by, and containing conditions prescribed by, the Attorney General," or "conditional parole." *See* 8 U.S.C. § 1226(a)(1), (2). This discretionary framework "requires a bond hearing to make an individualized custody determination." *See Lopez-Campos*, 2025 WL 2496379, at *9.

The Sixth Circuit has held that the balancing test set forth in *Mathews v. Eldridge*, 424 U.S. 319 (1976), regarding the adequacy of process, applies in the context of immigration detention. *United States v. Silvestre-Gregorio*, 983 F.3d 848, 852 (6th Cir. 2020) (applying the *Matthews v. Eldridge* test in the context of immigration). *Matthews v. Eldridge* requires a court to consider the following three factors: "(1) the private interest that will be affected by the official action; (2) the risk of erroneous deprivation of that interest; and (3) the government's interest, including the fiscal and administrative burdens that the additional or substitute procedures entail." *See Lopez-Campos*, 2025 WL 2496379, at *9 (citing *Mathews*, 424 U.S. at 335).

Petitioner has a significant private interest in avoiding detention, as one of the "most elemental of liberty interests" is to be free from detention. *See Hamdi*, 542 U.S. at 529. The Court

may also consider Petitioner's conditions of confinement, i.e., "whether a detainee is held in conditions indistinguishable from criminal incarceration." *See Günaydin v. Trump*, No. 25-CV-01151 (JMB/DLM), 2025 WL 1459154 at *7 (D. Minn. May 21, 2025) (citing *Hernandez-Lara v. Lyons*, 10 F.4th 19, 27 (1st Cir. 2021); *Velasco Lopez v. Decker*, 978 F.3d 842, 851 (2d Cir. 2020)). Respondents do not claim that the conditions of Petitioner's confinement at North Lake differ in any material way from criminal incarceration. Petitioner, through counsel, represents that he has a five-year-old son who is a United States citizen. (§ 2241 Pet., ECF No. 1, PageID.4.) He represents further that his son and wife "depend on him for emotional and financial support." (*Id.*, PageID.11.) Petitioner is now detained at North Lake, which is located in a different stated from his family, and there can be no doubt that he is "experiencing [many of] the deprivations of incarceration, including loss of contact with friends and family, loss of income earning, . . . lack of privacy, and, most fundamentally, the lack of freedom of movement." *See Günaydin*, 2025 WL 1459154 at *7. Therefore, the "private interest" factor strongly weighs in favor of Petitioner.

Likewise, the second *Mathews* factor weigh in Petitioner's favor. Clearly, there is a high risk of erroneously depriving Petitioner of his freedom should he not receive an individualized bond hearing at which the immigration judge can assess whether Petitioner poses a flight risk and/or a danger to the community.

Lastly, the Court recognizes that the Government "does, indeed, have a legitimate interest in ensuring noncitizens' appearance at removal proceedings and preventing harms to the community." *See Sampiao v. Hyde*, No. 1:25-CV-11981-JEK, 2025 WL 2607924, at *12 (D. Mass. Sept. 9, 2025). However, on the record before the Court, Respondents have not shown that it has a significant interest in Petitioner's continued detention. Notably, continuing to enforce

Petitioner's detention would likely impose more costs upon the Government, as it would be required to continue funding and overseeing Petitioner's detention. *See id.*

In sum, the Court's balancing of the *Mathews* factors weighs in Petitioner's favor. Accordingly, the Court concludes that Petitioner's current detention under the mandatory detention framework set forth in § 1225(b)(2)(A) violates Petitioner's Fifth Amendment due process rights.

## V.    Impact of *Castañon Nava*

Petitioner also argues that he was originally arrested without a signed warrant. (§ 2241 Pet., ECF No. 1, PageID.5–6.) As set forth above, Petitioner was arrested and detained without a warrant on October 11, 2025. The next day, ICE agents served Petitioner with a Form I-200, Warrant for Arrest of Alien, and Form I-862, the NTA. Petitioner contends that this practice violates the consent decree in *Castañon Nava v. Dep't of Homeland Sec. et al.*, No. 1:18-cv-3757 (N.D. Ill.), and that he is, therefore, entitled to release. (§ 2241 Pet., ECF No. 1, PageID.7, 12.) Respondents, however, contend that ICE complied with the terms of the consent decree when agents arrested Petitioner without a warrant. (ECF No. 4, PageID.46.) Specifically, Respondents argue that ICE agents complied with the consent degree "by documenting the facts and circumstances of Petitioner's arrest in his I-213 form." (*Id.*)

*Castañon Nava* is a class action lawsuit filed in 2018 against DHS and ICE to ensure that ICE complies with its statutory authority concerning the arrest of noncitizens. *Castañon Nava v. Dep't of Homeland Sec.*, No. 18-cv-3757, 2025 WL 2842146, at *1 (N.D. Ill. Oct. 7, 2025). [5] In *Castañon Nava*, the Northern District of Illinois recognized that the INA provides ICE agents with

---

[5] The plaintiffs are defined as "a settlement class consisting of all current and future persons arrested without a warrant for a civil violation of U.S. immigration laws within the ICE Chicago Field Office's Area of Responsibility." *Castañon Nava*, 2025 WL 2842146, at *4.

"limited authority" to arrest persons believed to be foreign nationals. *Id.* at *3 (quoting *Arizona v. United States*, 567 U.S. 387, 408 (2012)). In such cases, "[t]hey may arrest an alien for being 'in the United States in violation of any [immigration] law or regulation,' for example, but only where the alien 'is likely to escape before a warrant can be obtained.'" *Arizona*, 567 U.S. at 408 (quoting § 1357(a)(2)).

In 2022, the parties reached a consent judgment that precluded ICE from making warrantless arrests unless in compliance with the law. *Castañon Nava*, 2025 WL 2842146, at *5. The consent judgment was due to expire on May 12, 2025, unless the enforcement provisions within the agreement triggered an extension. *Id.* However, in January 2025, the plaintiffs' counsel learned that ICE agents were arresting class members without warrants in violation of the agreement, leading the plaintiffs to file a motion to enforce the agreement. *Id.* at *1, *5.

Just last month, the Northern District of Illinois ruled that "plaintiffs have shown by a preponderance of the evidence that ICE arrested twenty-two out of the twenty-six claimant class members without a warrant in violation of the Agreement and the requirements of 8 U.S.C. § 1357(a)(2)." *Id.* at *2. As relevant to this case, the Northern District of Illinois examined the language of the INA and precedent and determined that ICE lacks statutory and regulatory authority to issue I-200 warrants to collateral arrests in the field without the concurrent or prior issuance of a notice to appear, rendering the field warrants invalid and the validity of the arrests dependent on whether ICE had probable cause at the time of the arrest to believe that the noncitizen was were likely to escape before a warrant for their arrest could be obtained. *Id.* at *17.

According to the agreement, class members arrested without probable cause of a likelihood of escape "shall be released from custody on their own recognizance without posting bond as soon as practicable subject to certain exceptions (such as where the class member is subject to

19

mandatory detention pursuant to the INA)." *Id.* at *5. Those who had been released on bond "shall have their bond payments reimbursed and any conditions of release lifted subject to listed exceptions." *Id.*

The Northern District of Illinois has subsequently noted that "[i]mmediate release from custody may be an appropriate form of relief in cases brought outside of habeas or those centering other circumstances, such as . . . DHS's violation of an existing consent decree by conducting improper arrests in the Northern District of Illinois." *See Ochoa Ochoa v. Noem*, No. 25 CV 10865, 2025 WL 2938779, at *8 n.10 (N.D. Ill. Oct. 16, 2025). However, in this habeas action, this Court "declines to consider whether Petitioner is entitled to relief under the *Castañon Nava* agreement and notes that there is a process by which individuals can seek to join the *Castañon Nava* class." *Valencia v. Noem*, No. 25-cv-12829, 2025 WL 3042520, at *4 (N.D. Ill. Oct. 31, 2025) (first italics added).[6]

## VI.    Proper Respondents

Finally, Respondents request that the Court dismiss all Respondents except for the Detroit ICE Field Office Director because the other Respondents are not Petitioner's custodians within the meaning of 28 U.S.C. § 2243. (ECF No. 4, PageID.45.)

"The writ of habeas corpus does not act upon the prisoner who seeks relief, but upon the person who holds him in what is alleged to be unlawful custody." *Braden v. 30th Jud. Cir. Ct. of Ky.*, 410 U.S. 494–95 (1973). Thus,

> [r]ead literally, the language of § 2241(a) requires nothing more than that the court issuing the writ have jurisdiction over the custodian. So long as the custodian can

---

[6] *Castañon Nava* provides a process by which individuals can seek to join the plaintiff class. *See* Referral Form: Castañon Nava Settlement Violations, available at https://immigrantjustice.org/ referral-form-castanon-nava-settlement-violations-formulario-de-remision-sobre-violaciones-del-acuerdo-castanon-nava/ (last visited Nov. 12, 2025).

be reached by service of process, the court can issue a writ 'within its jurisdiction' requiring that the prisoner be brought before the court for a hearing on his claim, or requiring that he be released outright from custody, even if the prisoner himself is confined outside the court's territorial jurisdiction.

*Id.* at 495.

The Sixth Circuit has "conclude[d] that a detained alien generally must designate his immediate custodian—the INS District Director for the district where he is being detained—as the respondent to his habeas corpus petition." *Roman v. Ashcroft*, 340 F.3d 314, 322 (6th Cir. 2003). Here, Petitioner names as Respondents Field Office Acting Director of the Detroit Field Office of ICE Kevin Raycraft; United States Secretary of Homeland Security Kristi Noem; the United States Department of Homeland Security; United States Attorney General Pamela Bondi; the Executive Office for Immigration Review; The GEO Group, Inc.; and Unknown Party, referred to as the Warden of the North Lake Processing Center. (§ 2241 Pet., ECF No. 1, PageID.4–5.) Respondents contend that Raycraft is the only proper Respondent in this case. (ECF No. 4, PageID.45.)

In *Roman*, the Sixth Circuit stated that while it "conclude[d] that the immediate custodian rule generally applies to alien habeas corpus petitioners, [there is] the possibility of exceptions to this rule." *Roman*, 340 F.3d at 322. The *Roman* court went on to note:

Some courts are also willing to make an exception to the immediate custodian rule in other extraordinary circumstances. For example, courts have noted the INS's ability, as a practical matter, to deny aliens any meaningful opportunity to seek habeas corpus relief simply by transferring aliens to another district any time they filed a habeas corpus petition. *Chavez–Rivas*[*v. Olsen*], 194 F. Supp. 2d [368,] 374 [(D.N.J. 2002)]. Aliens remaining in detention for extended periods are often transferred several times during their detention. *See Lee v. Ashcroft,* 216 F. Supp. 2d 51, 55 (E.D.N.Y. 2002) ("[T]he location of custody, and the identity of the day-to-day custodian, frequently change when detainees are transferred among INS facilities, all of which are under the control of the Attorney General."); Rosenbloom, *supra,* at 549. In light of these transfers, one court reasoned that an alien may properly name a respondent other than his immediate custodian because a petition naming a higher level official, such as the Attorney General, could be adjudicated without interruption in the event of a transfer. *Arias–Agramonte*[*v. Comm'r*], [No. 00 CIV. 2412 (RWS),] 2000 WL 1617999, at *8 [(S.D.N.Y. Oct.

21

30, 2000)] (explaining that a petition naming only one's immediate custodian would be dismissed when the alien was transferred to another local district).

*Id.* at 325–26. Thus, the Sixth Circuit concluded, "an exception might be appropriate if the INS were to exercise its transfer power in a clear effort to evade an alien's habeas petitions." *Id.* at 326.

In light of the foregoing, the Court recognizes the need to ensure that Respondents maintain authority to enforce this Court's grant of habeas relief and directive that Petitioner receive a bond hearing or, alternatively, be released in the event that Petitioner is transferred out of the Western District of Michigan. The Court, therefore, will not dismiss Secretary Noem as a Respondent to these proceedings. The Court will, however, dismiss the United States Department of Homeland Security; United States Attorney General Pamela Bondi; the Executive Office for Immigration Review; The GEO Group, Inc.; and Unknown Party, referred to as the Warden of the North Lake Processing Center, as Respondents.

## VII.  Summary

As the Eastern District of Michigan recently stated, "[t]he recent shift to use the mandatory detention framework under Section 1225(b)(2)(A) is not only wrong but also fundamentally unfair. In a nation of laws vetted and implemented by Congress, we don't get to arbitrarily choose which laws we feel like following when they best suit our interests." *Lopez-Campos*, 2025 WL 2496379, at *10. For the reasons set forth above, the Court disagrees with Respondents that Petitioner's detention is governed by § 1225(b)(2)(A) and, therefore, that Petitioner is subject to mandatory detention. Instead, the Court concludes that Petitioner's detention is governed by § 1226(a) and, therefore, that Petitioner is entitled to a discretionary and individualized bond determination as set forth in that statute. Likewise, the Court finds that because Petitioner's detention is governed by § 1226(a), his current detention under § 1225(b)(2)(A) violates Petitioner's Fifth Amendment due process rights.

As set forth above, Petitioner seeks alternate forms of relief. First, he requests that the Court issue a writ of habeas corpus "requiring Respondents [to] promptly release or, if Petitioner is already released on bond and no longer in ICE custody, prompt reimbursement of all bond payment, and lif[t] all imposed conditions of release." (§ 2241 Pet., ECF No. 1, PageID.14.) Alternatively, Petitioner seeks a writ of habeas corpus directing Respondents to either release Petitioner or provide him with a bond hearing pursuant to 8 U.S.C. § 1226(a). (*Id.*) Petitioner, however, indicates that the first form of relief sought is the remedy for any violation of the *Castañon Nava* agreement. As discussed above, the Court has declined to consider whether Petitioner is entitled to such relief.

With respect to Petitioner's alternate request for relief, while Petitioner is entitled to a bond hearing, the Court notes that the immigration judge is in a better position to evaluate whether Petitioner poses a flight risk and a danger to the community. Accordingly, the Court leaves to the immigration judge's sound discretion a determination on that issue.

## Conclusion

For the reasons discussed above, the Court will enter an order and judgment granting Petitioner's petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241. (ECF No. 1.) The Court will order Respondents to provide Petitioner with a bond hearing under 8 U.S.C. § 1226(a) within five business days of the date of this Court's opinion and accompanying order and judgment or, in the alternative, immediately release Petitioner from custody. The Court will also order Respondents to file a status report within six business days of the date of this Court's opinion and accompanying order and judgment to certify compliance with this opinion. The status report shall include if and when the bond hearing occurred, if bond was granted or denied, and if bond was denied, the reasons for the denial. The Court will also dismiss the U.S. Department of Homeland

Security, Pamela Bondi, the Executive Office for Immigration Review, The GEO Group, Inc., and

Unknown Party as Respondents in this matter.


Dated:   __November 19, 2025__          __/s/ Paul L. Maloney_____
                                          Paul L. Maloney
                                          United States District Judge